326.  SOUTHERN RAILWAY COMPANY *v.* PURYEAR.

1. The act of an engineer in blowing a whistle in compliance with the mandate of the statute in approaching a public crossing is not negligence, unless the whistle be blown in such manner as to produce an unnecessary and unusual noise. Neither is the blowing of the whistle by the engineer for the purpose of preventing stock from getting on the track in front of a running train, where there is apparent danger that the stock will get on the track unless so frightened away, negligence, unless the blowing be done in an unusual and unnecessary manner. There was no evidence in this case to support the verdict against the railway company, and the presumption of negligence was clearly rebutted by the positive and uncontroverted testimony.

2. To render a railroad company responsible in damages for killing a horse, the evidence, or some reasonable inference deducible therefrom, must show that the death of the horse resulted from the injuries received. The evidence and circumstances in this case failed to show that the death of the horse in April was the result of the injuries received in December before, but did clearly show that such death was caused by some disease disconnected with those injuries.

Certiorari, from Whitfield superior court—Judge Fite. October 9, 1906.

Argued May 7,—Decided May 24, 1907.

*Shumate, Maddox & McCamy, J. M. Rudolph,* for plaintiff in error.

*George G. Glenn,* contra.

HILL, C. J. Puryear sued the Southern Railway Company in a justice's court for damages for the alleged killing of his colt in December, 1904, by the running of the train of the defendant company; the suit being for $75. The verdict and judgment in the case were against the defendant, for $75. Thereupon it brought its petition for certiorari to the superior court. The judge of the superior court, on the hearing of the certiorari, overruled the same, and refused to grant a new trial. This judgment is brought here for review. The evidence makes the following case: In the latter part of December, 1904, the colt in question and a mule were in the dirt road, at a point about 400 or 500 yards south of where the dirt road crosses the track of the Southern Railway. The colts were a short distance south of the blow post of said crossing. The dirt road at this place runs parallel to and within a very short distance of the railroad track. At the time of the injuries complained of the train of the defendant company was running north. The uncontradicted evidence of the engineer is that, as he approached the blow post for said crossing, he observed the colts in the dirt road, and that they commenced running along the dirt road together; that when he reached the blow post he blew the crossing signal; that the colts continued to run up the road ahead of the engine, and that, being afraid that they would run on down to the crossing and take up the track, which was the habit of animals under similar circumstances, in the effort to prevent this and to frighten the colts away from the track and make them turn back, he commenced blowing the stock alarm at them; that the mule colt did turn back, but that the horse colt continued running down the road, outrunning the train, and passed over the crossing, and that was the last he saw of him. The engineer further testified that there was no unusual or unnecessary noise made by the running of the train, or by the blowing of the whistle at the time and place of the blowing, and that the blowing of the whistle was the proper thing to do under the circumstances; that he ceased blowing the whistle before the colt reached the crossing, and did not blow it any more. This evidence of the engineer was corroborated by the

fireman, and was not contradicted by any of the witnesses for the plaintiff. The testimony shows that the colt, after running across the railroad crossing, ran into the fence, knocked down two panels and one of the posts, and cut its shoulder and its flank, and sprained its right ankle. The cut in its shoulder was from four to six inches long and about an inch deep in the deepest place; but the wounds were flesh wounds and did not strike the bone. The sprain in the ankle caused it to become slightly enlarged, and when the colt would walk it had a slight limp. There were no bones broken at all. The flesh wounds healed, but the colt never seemed to get right. On April 15th, thereafter, the plaintiff drove the colt through the country, 18 miles, to his father's. Some time afterwards the colt was turned loose in the pasture with other stock, and it got sick. It was doctored, and got better; but it again got sick and died. Several of the witnesses testified that they could not tell what was the matter with the colt, but that it just "got down and seemed to be weak." One of the witnesses, who seemed to be somewhat of a horse doctor, thought the colt had the colic, and drenched it with buttermilk. This is substantially all the evidence in the case, and the question presented is: Does this evidence, considered most favorably for the plaintiff, make a case of liability against the railroad?

1. The proximate cause of the fright of the colt, as shown by the uncontradicted evidence, was the noise of the approaching train; for there had been no blowing of the whistle at the time the colt was seen running up the dirt road parallel with the railroad track. There was no unusual noise caused by the running of the train, only the noise incident usually to the running of a heavy freight train. The evidence showed that it was absolutely necessary for the whistle to be blown at the blow post, in order to comply with the imperative mandate of the statute; but the testimony is uncontradicted that in the performance of this duty the engineer did not blow the whistle so as to cause an unnecessary or unusual noise. If the noise of the running train and the blowing of the whistle at the blow post caused the fright of the colt, the railroad would not have been liable; for these things were not negligence, unless unusual and unnecessary, or done in an unusual or unnecessary manner. This is too clear for doubt. The blowing of the whistle by the engineer subsequently was done by him (according to his

uncontradicted evidence) for the purpose of preventing the colts from running on the track or across the crossing, and was done for the purpose of preventing injury to the colts by frightening them away from the track. We do not think that the engineer can reasonably be adjudged guilty of negligence for blowing the whistle for the purpose indicated, if done in a proper way. On the contrary, we think it was the prudent thing for the engineer to have done. We think, therefore, that if the noise of the running train and the blowing of the whistle, under the circumstances, caused the fright of the colt, and caused it to injure itself as described in the evidence, the company is not responsible for such fright or the consequences thereof; for the evidence clearly shows that its agent exercised all ordinary and reasonable care and diligence in connection with the matter and to prevent any injury to the colt, the specific act of alleged negligence in blowing the whistle being neither unusual nor unnecessary at the time when and the place where it was done.

2. The evidence showed that the colt was injured the last of December, 1904, by running into the fence, and inflicting upon itself two flesh wounds and spraining one ankle. These wounds were not serious, and the two flesh wounds were entirely healed, and as a result of the sprained ankle there was a slight limp. The colt died five months thereafter from some unknown disease, which was thought by the person who treated it to have been colic. Even if the company was liable for the injuries which the colt received in running against the fence, unless it died as a result of such injuries, the company would not be liable for its death. The facts of this case, instead of showing, or even raising an inference, that the death was the result of the injuries, indicated very clearly that death was caused by some disease wholly unconnected with the injuries. We therefore conclude that there was no evidence of negligence on the part of the defendant railway, but that, on the contrary, any presumption of negligence arising from the injuries was fully rebutted by the positive and uncontradicted testimony of unimpeached witnesses, and that the death of the colt resulted, not from the injuries received in December, but from some disease wholly disconnected therefrom in April following.

The judgment of the superior court in overruling the certiorari and refusing a new trial is                          *Reversed.*